**UNITED STATES of America ex rel. William LAWRENCE, Relator-Appellant,**

v.

**Max P. FRYE, Warden, Illinois State Penitentiary, Menard Branch, Respondent-Appellee.**

**No. 15960.**

United States Court of Appeals Seventh Circuit.

Jan. 21, 1969.

William Lawrence, Patrick J. Phillips, Chicago, Ill., for appellant.

William G. Clark, Atty. Gen., Donald J. Veverka, Asst. State's Atty., Chicago, Ill., for appellee, John J. O'Toole, Asst. Atty. Gen., of counsel.

Before MAJOR, Senior Circuit Judge, and SWYGERT and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Application for habeas corpus by a state prisoner. After separate trials in July, 1958, William Lawrence was convicted by an Illinois court of assault with intent to murder and robbery while armed. His sentence for assault was not less than 19 nor more than 20 years imprisonment and for robbery not less than 50 years nor more than life. His petition under Illinois post-conviction procedure was ultimately denied, after hearing, July 13, 1962, and a writ of error was denied by the Supreme Court of Illinois. On March 14, 1966, he sought habeas corpus in federal district court. Upon examination of the two petitions filed at the same time, and without requiring the warden to show cause, the district court denied the application. Lawrence appealed to this court. Counsel first appointed by this court was given leave to withdraw

November 20, 1967, and present counsel appointed.

The two convictions arose out of events on February 12, 1958. Lawrence entered a Chicago super market, armed with a revolver, and intending a hold-up. According to the state version, he threatened a clerk, named Weiner, with his gun, and obtained $6 Weiner had on his person; other employees became aware of the situation and a melee ensued; Lawrence shot Weiner once and the manager, Levin, shot Lawrence four times with Levin's revolver. According to Lawrence, the melee began before Lawrence obtained any money; Lawrence lost his gun without firing; Levin not only shot Lawrence, but accidentally shot Weiner. If Lawrence were correct, the state had not proved more than an attempted robbery, and although an assault may well have occurred, there would have been little, if any, evidence of an intent to murder.

Lawrence's petitions were voluminous, listing a number of points, some vague and merely conclusory and some overlapping, on which he bases his claims for relief. In several respects they so clearly lack arguable merit in terms of deprivation of federal constitutional rights that no discussion is required. The claims to which we address ourselves are: (1) alleged denial of equal protection of the laws with respect to motion for change of venue on account of prejudice of the judge; (2) alleged suppression of Lawrence's top coat; (3) alleged suppression of bullet extracted from Lawrence's body; (4) alleged knowing use by the prosecution of perjured testimony; (5) alleged ineffectiveness of defense counsel.

Lawrence filed his state post-conviction petition February 11, 1960. It was dismissed without a hearing March 10, 1961. The Supreme Court of Illinois, on January 23, 1962, reversed and remanded, with an order requiring, in substance, a hearing on claims above numbered (1) and (2). Hearings were held in 1962, resulting in denial. Lawrence was represented by counsel at the hearings. Although the district court felt able to decide this matter on the basis of Lawrence's own description of the hearings, set forth in considerable detail in his petitions, the state, on appeal, tendered the record of the 1962 hearings, and we have examined it.

■ (1) *Motion for change of venue.* Lawrence claims unequal protection in that he was treated differently from two other defendants with respect to a change to a different judge after the first judge indicated the sentence he would impose after plea of guilty. Lawrence was denied a change of venue and he named two others who, he alleged, were granted a change of venue under similar circumstances.

The Supreme Court of Illinois, in its 1961 decision, held that Lawrence's allegations in this regard were sufficient to require an evidentiary hearing. We have some doubt whether the fact that one defendant is treated differently from two others with respect to this matter of procedure amounts to a denial of equal protection of the laws. Assuming, however, that it might, Lawrence was unable to prove his claim.

The record shows that on May 6, 1958 Mr. Scott, Lawrence's attorney, presented a motion for change of venue grounded upon the prejudice of Judge Dieringer, the trial judge. Judge Dieringer denied it on the ground that Lawrence had previously obtained a pretrial conference for the purpose of discussing the case and attempting to arrive at a disposition without trial. The judge stated that he considered a conference of that type as a preliminary motion, and that when a defendant seeks a conference for plea bargaining he foregoes his right to a change of venue. In the only direct review of these convictions, the Supreme Court of Illinois held that on that theory Lawrence's motion was too late and properly denied.[1]

Minute entries in Lawrence's cases show that on May 5, 1958, on his motion,

1. People v. Lawrence (1963), 29 Ill.2d 426, 194 N.E.2d 337.

a pretrial conference was allowed and on May 6, his motion for change of venue was entered and denied. There are no similar entries in the cases of William Minor and James Barksdale, the other defendants named by Lawrence. Entries show that Minor's case was assigned to Judge Dieringer May 6, subsequently continued, and transferred on July 8 to chief justice for reassignment. Barksdale's cases were assigned May 7, continued, and transferred for reassignment July 10.

It may well be that Minor and Barksdale thought that their attorneys obtained a change of judge after obtaining an expression from Judge Dieringer of the sentence he would impose. Testimony of Minor and Barksdale's mother indicating that they gained such understanding from their attorneys was offered, but rejected as hearsay, and Barksdale made an affidavit of similar import. Lawrence did not know the identity of Minor's counsel and Barksdale's had indicated he had no recollection of the matter. The record suggests that when these cases were reassigned in July, Judge Dieringer's assignment to criminal trials was about to expire. Perhaps counsel for Barksdale and Minor were more adroit in their maneuvers than attorney Scott, but improper differentiation has not been shown.

■ (2) *Lawrence's top coat.* There was proof that four bullets had been fired from Levin's gun and one from Lawrence's. The state contended that the four from Levin's gun hit Lawrence, and the one from his gun hit Weiner. Lawrence evidently claimed that there were eight bullet holes in his suit coat and corresponding ones in his top coat. He was allowed to take his suit coat to the courtroom, but claims that a guard told him that he could not take his top coat without a court order.

Lawrence claims that his top coat was examined by the judge and the state's counsel in the judge's chambers during the robbery trial, was found to be evidence favorable to Lawrence and there-

after kept from him. The Supreme Court of Illinois ordered a hearing on this claim, also.

At the state post-conviction hearing the warden of the Cook county jail testified to the following effect: While Lawrence was on trial, the warden received a call from someone at the criminal court building who asked that the warden look at Lawrence's top coat to see if there were holes or tears in it. The warden could not remember who called, and said that similar requests are often made, either by prosecution or defense. He sent an officer to get the coat, looked at it, and reported by telephone to the person who called. The coat remained on top of the warden's safe for four or five months. No one claimed it, and ultimately it was repaired in the jail shop and put in the welfare clothing unit.

A friend of Lawrence's testified she called at the jail in September, 1958 and received the suit coat, but was told the top coat could not be found. Mr. Scott was not called to testify. The two state's attorneys denied any recollection of making the call or seeing the coat. Two other jail inmates signed affidavits that they were present when the officer came to the cell tier and obtained the coat. One of them said the officer had said the judge wanted the coat in his chambers. Judge Dieringer, who presided at the post-conviction hearing, emphatically asserted that he did not see or hear about the coat.

There appears to be no question but that the coat was taken from Lawrence's cell during the robbery trial and was available to him up to then. It would seem that if the coat was evidence of anything relevant, it was more important during the assault trial, when it was available to Lawrence, than during the robbery trial.

If Lawrence's evidence had been sufficient to support his charge about the coat, Judge Dieringer's alleged personal involvement in the charge could well have been a sufficient reason for reject-

ing the finding by him and the hearing before him as inadequate. As it stands, however, Lawrence wholly failed to substantiate his claim.

■ (3) *The bullet.* At the post-conviction hearing, Lawrence sought to amend his petition with respect to suppression of other evidence, and he repeats the claim in the federal petition. Judge Dieringer denied leave to amend and declined to hear evidence in support of the amendment. The Supreme Court of Illinois affirmed, holding the amendment was not timely.

In the amendment, Lawrence claimed that Levin fired a bullet which struck Lawrence in the abdomen; that the bullet was removed by surgery and given to Chicago police officer Stapleton by a nurse; that the difference between the two revolvers was such that a ballistics expert could distinguish between bullets fired from them by ordinary visual examination; that since only one bullet was fired from Lawrence's revolver, proof that the bullet taken from his body was fired from his own revolver would establish that he did not shoot Weiner. It appears elsewhere that the state did introduce spent bullets from Levin's gun.

In the light of Lawrence's assertions that he did not fire his revolver in the encounter, we think the claim made in this amendment is sufficient to call for an answer by the state.

The district court, in denying this claim, noted that the state had officer Stapleton present at the post-conviction hearing before Judge Dieringer, and concluded that Lawrence must be deemed to have elected not to call him. The district court, not having the record before it, failed to observe that Judge Dieringer's denial of leave to amend prevented Lawrence from introducing evidence to support the amendment.

It is true that the fact which the bullet might establish, that Lawrence did not shoot Weiner, is more clearly relevant to the assault charge for which Lawrence received the shorter sentence.

Yet we gather that the robbery trial included proof of the shooting, and the jury verdict may have been affected by it. We think also that the sentence on the robbery charge was probably affected by the fact, determined by the first verdict, that Lawrence had shot the clerk.

■ (4) *Alleged use of perjury.* In addition to challenging the testimony that Lawrence fired the shot which struck Weiner, Lawrence contends that Weiner's testimony that Lawrence took $6 from Weiner and certain other corroborating testimony was perjury and known by the state to be so. Lawrence testified to his version at trial, and the jury found the Weiner version true.

Lawrence offers two items of information, presumably not developed before the jury (though he says they were known to Scott), to show a probability that Weiner's testimony was perjury, known to the state.

One is Lawrence's bare assertion that an unnamed policeman told unnamed nurses at the hospital where Lawrence was treated that Lawrence didn't have a chance to get a penny. Standing alone, this assertion is insubstantial.

The other item is a copy of a police report of February 12, 1958 concerning the shooting of Lawrence and Weiner. The report says Lawrence was wounded "during attempted robbery." It summarizes the account given to police by Levin and store employee Galkin. It indicates that when Galkin and Levin saw Lawrence pulling a gun out of his pocket, Lawrence was at the checkout counter where Galkin was stationed and Weiner was at another counter ten feet away. Weiner was interviewed at the hospital and the report asserts he "corroborated the version" of Galkin and Levin. There was no mention of the taking of any money.

The difference between the facts reflected in the police report and those apparently presented to the jury by the state's witnesses may well be explainable without concluding that the witnesses gave false testimony. It is difficult to

evaluate the probabilities even superficially without examining the actual trial testimony.

We think, however, that under the circumstances, the state should have been required to show cause with respect to this claim. Whether an evidentiary hearing will be required on remand will depend on the showing made by the state.

■ (5) *Alleged ineffectiveness of defense counsel.* Mr. Scott represented Lawrence at both trials. He had been retained by a friend of Lawrence. Lawrence says that he and Scott had arguments about payment of fees and about the presentation of the defense. He says that Scott was competent, but failed to investigate and prepare properly. He claims that he attempted to discharge Scott, but the judge would not permit him to do so.

These efforts apparently preceded the beginning of the second trial. At that time Lawrence concedes that he, Scott and Judge Dieringer discussed Lawrence's previous dissatisfaction with Scott, Lawrence said that he felt differently about it, was satisfied with Scott and thought he did an excellent job. Lawrence seeks to explain away these statements by saying that he made them out of fear that to say otherwise would increase the hostility of the court.

We agree with the district court that Lawrence's petitions do not sufficiently show that he did not have the assistance of counsel.

### Conclusion.

We think that claims (1) and (2) received an adequate hearing and determination in the state court post-conviction proceeding. Claim (5), as well as other claims not specifically discussed in this opinion, did not present sufficient merit to require an answer by the state. We think that claims (3) and (4) merit further inquiry. On remand the state (respondent-appellee Frye, warden) should be ordered to show cause in answer to those claims. Presumably an evidentiary hearing will be necessary, with counsel for Lawrence. Although we di-

rect further inquiry on claims (3) and (4) only, we do not foreclose the district court from extending the inquiry if, in its discretion, that seems appropriate.

Petitioner is presently represented in this court by Patrick J. Phillips, a member of the Illinois bar. We thank him for his excellent service as appointed counsel.

The order denying the petition for writ of habeas corpus is reversed and the cause remanded for further proceedings consistent with this opinion.